John J. Lazzaro, Plaintiff-Appellant, v. Adelbert D. Garrett, Defendant-Appellee.

Gen. No. 68–20.

Second Judicial District.

October 28, 1968.

Rehearing denied December 10, 1968.

Lawrence J. Ferolie, of Rockford, for appellant.

Maynard, Maynard and Brassfield, of Rockford, for appellee.

MR. PRESIDING JUSTICE ABRAHAMSON delivered the opinion of the court.

The plaintiff appeals from a judgment in his favor in the amount of $5,000 by the Circuit Court of Winnebago County entered on a verdict of the jury. The cause had proceeded to trial on the issue of damages only since the defendant admitted liability in his amended answer.

It is the contention of the plaintiff that the verdict was inadequate and against the manifest weight of the evidence since he had introduced medical bills in the amount of $1,030.73 incurred as a result of his injuries and additional evidence of lost wages in an amount of $5,218.00. Plaintiff also urges that the inadequate verdict was caused by the erroneous inclusion and exclusion of certain evidence. To properly consider the plaintiff's contentions, it is necessary to review the evidence in considerable detail.

John Lazzaro testified that he was a trooper with the Illinois State Police and had been so employed since 1941. On December 27, 1964, he was involved in an automobile accident admittedly caused by the negligence of the defendant. He stated that he noticed pain in his "neck, arm, elbows, shoulders and down my back" immediately after

the occurrence and was taken to the hospital for X rays. The following morning, Lazzaro had "severe" pain in his shoulders, neck and elbows and went to Dr. Donald Lyddon, an orthopedic surgeon, to seek relief. At Dr. Lyddon's direction, the plaintiff took 40 or 50 traction and ultrasonic treatments during the next 5 months but continued to have severe pain in his neck, arms, back and right hand. Although plaintiff continued to have an aching pain in his right shoulder, Dr. Lyddon in March of 1965, suggested that he return to work if a desk job was available. Plaintiff actually returned to work in May of 1965 but discovered that his capacity to perform the normal functions of a trooper were impaired by an inability to move his head easily or to grip the steering wheel and make written reports with his right hand. He was also unable to sit in a car for any long periods without pain and on one occasion was only able to get out of his squad car by crawling.

The plaintiff worked more or less regularly from July of 1965 to the end of 1966, although he continued to experience pain in his shoulders, neck and right hand. His last day of work was on January 4, 1967, and his employment terminated on May 9, 1967. Lazzaro further testified that prior to the accident he was always able to perform his duties as a police officer although he had strained his back in August of 1963 and was under a doctor's care for 5 or 6 weeks. He also stated that at the time of trial he still had pain in his neck, shoulders, elbow and back.

Dr. Lyddon testified that he first saw Lazzaro on December 28, 1964, when he complained of pain in his neck, shoulders and elbows as a result of the accident. Lyddon noticed a muscle spasm in Lazzaro's neck on that date and prescribed relaxant drugs and cervical traction to relieve the spasm. X rays of the cervical spine revealed minimal osteoarthritis but no evidence of fracture. On January 18, 1965, Lazzaro complained of pain in his right

454

hand, and ultrasonic therapy was begun. Lyddon continued to treat his patient on a regular basis and by March 9, 1965, diagnosed his illness as a ruptured cervical disc which if not corrected by surgery, might result in permanent nerve damage to the arm. On March 30, 1965, Lazzaro first complained to Lyddon of pain in the lower lumbar region of his back. By May, 1965, the pain in his neck and shoulders was no longer constant and Lazzaro returned to work. On July 16, 1965, Lazzaro exhibited full neck motion without pain but experienced pain in the lower back after prolonged driving. Dr. Lyddon last saw the plaintiff on December 5, 1966, and because of the complaints that he made referred him to Dr. John Bender, a neurologist, since he still complained of recurrent pain in both arms and a weakness in the right arm.

Dr. Bender examined Lazzaro on December 22, 1966, and found a muscle wasting in the right hand and a rigidity of the spine. As part of his medical history, the plaintiff informed Dr. Bender that he "felt" a strain in his lower back at the time of the accident and a "snap sensation" in his lower back when he got back in his car. Thereafter, according to the history given Dr. Bender, Lazzaro had constant pain in his lower back and a numbness in his left leg. Complete X rays were taken in the course of the examination, including X rays of the lumbar region of the back and on the basis of his examination, Dr. Bender diagnosed the plaintiff's illness as degenerative arthritis of the entire spine. Dr. Bender also "suspected" a cervical disc rupture although he was not able to "definitely establish" it. It was his opinion that the arthritic condition existed prior to December 27, 1964, but that the trauma of that date could have "triggered" or aggravated Lazzaro's condition of ill-being. It was his opinion also that Lazzaro was incapable of performing the normal functions of a police officer as a result of that condition.

455

At the request of the defendant, the evidence deposition of Dr. Michael Reiffel was read to the jury. Dr. Reiffel had examined Lazzaro on April 24, 1964, in regard to his injury of August, 1963. Lazzaro told Dr. Reiffel that on that occasion he was removing an obese woman from an automobile when he experienced a "sharp, snapping pain in the lower portion of his back." X rays of the lower spine were taken on April 24, 1964, and revealed arthritic changes in the facet joints and a flattening of the lumbar disc due to degeneration. It was Dr. Reiffel's opinion that this arthritic condition had existed prior to August, 1963, was "permanent and progressive" and that there was an impairment in the motion and function of the left leg. Dr. Reiffel saw the plaintiff again on September 9, 1964, when he complained of pain in his back, and an inability to bend and a numbness in his left leg.

There was no objection to the medical bills submitted by the plaintiff or as to the time he was absent from work. With this and other evidence before it, the jury returned a verdict of $5,000 for the damages suffered by the plaintiff.

■ Ordinarily a court will not interfere with the discretion of the jury in its assessment of damages except where they are palpably inadequate or it is clear that a proven element of damages has been ignored. Johanneson v. Ring, 82 Ill App2d 340, 348, 226 NE2d 291; Haleem v. Onate, 71 Ill App2d 457, 219 NE2d 94. It was contended by the plaintiff that the award of $5,000 was palpably inadequate since it was less than the special damages proven and that it is therefore against the manifest weight of the evidence and should be reversed.

■■ As we have seen, the jury was presented with competent evidence that the plaintiff had suffered a cervical rupture as a result of the accident. There was also evidence that he had a degenerative arthritic condition of the spine prior to the accident and that it would

inevitably become worse as he grew older. While plaintiff was entitled to recover for damages that resulted from any aggravation of this condition, it was necessary for him to prove that those damages were proximately caused by the negligent act of the defendant. The jury was properly instructed to this end and it was its function to consider the evidence as a whole to determine what damages were attributable to the fault of the defendant.

■ The testimony that the plaintiff's preexisting arthritic condition was static prior to the accident was contradicted by other testimony from medical witnesses that the degenerative course of the condition was "irreversible." The plaintiff's subjective complaints of the effects of his back strain of August, 1963, given to Dr. Reiffel 9 months later were remarkably similar to the complaints reported by Dr. Bender in his history of December, 1966. In both instances the plaintiff felt a sharp, "snapping sensation" at the time of the incident, pain in the lower back, and a radiating numbness in the left leg. Dr. Reiffel's deposition indicated that in his examination of September 9, 1964, only 4 months before the date of the automobile accident, he noticed the plaintiff's lumbar muscles "were spastic, in a state of contraction . . . nature's way of splintering the back to immobilize a painful back . . . ." Under the circumstances, we do not feel that the amount of damages awarded by the jury was against the manifest weight of the evidence nor does it appear that the jury was confused by the course of the trial. The award is within the range of the evidence. The jury was properly instructed and was not motivated by either passion or prejudice and we will not substitute our judgment for that of the jury.

■ ■ The plaintiff also complains that it was improper to permit Dr. Parker Hardin to testify for the defense that he examined the plaintiff in September of 1963 in regard to injuries involving his ribs and chest

457

since those injuries were completely unrelated to the present case. In his brief, the defendant attempts to justify Dr. Hardin's testimony on the grounds that it was introduced to impeach the plaintiff and as evidence of injuries received in a prior accident. The record does not indicate that it was used for impeachment purposes although the plaintiff had stated in a pretrial deposition that he had not previously been injured. As evidence of a prior injury it was clearly inadmissible since no connection between the injuries suffered in September of 1963 and those of December of 1964 was established. Marut v. Costello, 34 Ill2d 125, 128, 214 NE2d 768. However, on cross-examination, Dr. Hardin stated that the plaintiff was not permanently disabled as a result of his injuries suffered in September of 1963, and we do not feel that the plaintiff was prejudiced by the admission of the testimony.

■ Finally, we consider the contention of the plaintiff that the jury was confused by the refusal of the trial court to permit Dr. Reiffel's opinion that his injuries of August, 1963, would not inhibit his duties as a police officer to be read to the jury as part of his evidence deposition. Dr. Reiffel, it will be recalled, had examined the plaintiff for an injury to his back. Dr. Reiffel was asked "Do you know what his (the plaintiff's) duties were as a policeman?" and he answered "Specifically, no, other than that of a policeman." To a second question, he then answered that the plaintiff's injuries would "not inhibit his doing his duties." Since the witness had indicated a lack of knowledge of the plaintiff's "duties," we feel that the trial court was well within its judicial discretion in its exclusion of his opinion as to his ability to perform those duties.

We conclude that the verdict of the jury, when considered with the character of the evidence before it, was not palpably inadequate or against the manifest weight of the evidence. In addition, the record discloses that the

458

plaintiff received a trial free of grave error and the judgment will therefore be affirmed.

Affirmed.

DAVIS and MORAN, JJ., concur.