KEVIN WISNAWSKI, a Minor, by Joseph Wisnawski, his Father and Next Friend, Plaintiff-Appellant, *v.* WILLIAM R. HUNGERFORD, Defendant-Appellee.

(No. 70-94; ■■■■■■■■)

Second District—March 8, 1971.

Howard & French, of Chicago, (Richard D. French, of counsel,) for appellant.

Rathje, Woodward, Dyer & Burt, of Wheaton, (Peter A. Zamis, of counsel,) for appellee.

Mr. JUSTICE ABRAHAMSON delivered the opinion of the court:

The plaintiff sued for personal injuries arising out of an accident when plaintiff was a pedestrian and was struck by an auto driven by the defendant. A jury trial in the Circuit Court, Du Page County, resulted in a verdict for the plaintiff of $2,500.00. Plaintiff appeals from the verdict of the jury and the judgment entered thereon and from the denial of his post-trial motion in which he requested the trial court to vacate the verdict of the jury and the judgment with regards to damages and to award plaintiff a new trial as to damages only.

The plaintiff contends that the trial court erred in denying his motion for post-trial relief because the jury, by its verdict, found the defendant guilty of wilful and wanton misconduct but failed to award plaintiff a sufficient sum for exemplary or punitive damages, and also because the jury arbitrarily abused its discretion in the assessment of damages.

On December 16, 1966, the plaintiff, a minor, nine years of age, was a passenger in a car driven by a Mrs. Marion Tinault. Mrs. Tinault also had two of her own children in the auto when she was driving the plaintiff home. She was proceeding east on Elmhurst Road in Bensenville, and according to her testimony she came to a stop even with the stop sign on the southwest corner of Elmhurst Road and Spruce Street. After she stopped, the plaintiff got out of her car, walked to the front of her car, and she saw him "look." She looked in her rearview mirror just before the plaintiff got out of her auto, and then looked again when he was in front of her. Seeing no traffic, she waved for him to cross the street. The plaintiff crossed directly in front of her, walking in a northerly direction, and when he was about three-fourths of the way across

the street, she lost sight of him and at the same time saw the defendant's auto moving at a very slow pace. Thereafter, she saw the defendant's auto stop when it reached the other side of the intersection. The plaintiff testified that he waited until Mrs. Tinault gave him a signal before he started to cross the street and that he looked in both directions but saw no cars approaching. He was in the middle of the westbound lane of Elmhurst Road when he was struck.

The defendant testified that he was traveling in an eastbound direction on Elmhurst Road and that he observed the Tinault auto in the "fanned out" portion of the southwest corner, east of the stop sign. Further, he stated that he came to a complete stop near the stop sign and somewhat to the east of the rear of the Tinault auto. Seeing no pedestrians in the vicinity, he pulled away very slowly from the stop sign, moving two or three feet to the left of the Tinault auto. Once he was several feet into the intersection, he saw a brown flash and heard a thumping while he was proceeding at approximately five miles per hour. He did not know what the flash was so he proceeded across the intersection and stopped on the east side of the intersection. At that time he got out of his auto and saw the plaintiff's head underneath his auto.

The plaintiff suffered a fracture of the skull, pelvic injury, cerebral concussions, lacerations of the chin and lower lip, abrasions, a chipped tooth, and a retroperitoneal hemorrhage, according to the testimony of the doctors. Plaintiff was in the hospital for three weeks, and two weeks after his discharge from the hospital he returned to school. He did not engage in any gym classes or physical activity for the rest of his fourth-grade year, but by September of 1967 he played baseball, football and basketball, and did not have any complaints as to his physical condition.

A Dr. Finch treated the plaintiff upon his admission to the hospital and called in as consultants a Dr. Arias, for the head injury, and a Dr. Huncke, an orthopedic surgeon, for the pelvic fracture. Dr. Finch last saw the plaintiff on April 6, 1967, and testified that the boy had made an excellent recovery. Dr. Huncke, on January 23, 1967, released the plaintiff to full activity. Dr. Arias, on January 3, 1967, recorded a normal encephalogram which date was just before plaintiff's discharge from the hospital. He saw the plaintiff three times thereafter, at which time the plaintiff made no complaints. Dr. Arias also testified that he did not feel the plaintiff would have any problems, in the future, pertaining to his head injury.

The plaintiff's complaint contained two counts: 1) based on defendant's negligence; and 2) based on defendant's wilful and wanton misconduct. A special interrogatory was presented to the jury as to whether plaintiff was guilty of contributory negligence. The jury answered that

interrogatory in the affirmative. The jury rendered a verdict in favor of the plaintiff, apparently on the wilful and wanton misconduct charge, and assessed the damages as hereinbefore stated at $2,500.00. The testimony revealed that plaintiff's out-of-pocket expenses were $2,040.00, just $460.00 less than the verdict. Defendant has filed no cross-appeal, so there is no issue presented as to whether the jury properly found the defendant guilty of wilful and wanton misconduct.

The plaintiff's first contention is in essence that, since the defendant was found guilty of wilful and wanton misconduct, the jury failed to award sufficient exemplary or punitive damages and thereby failed to consider the statutory violations of the defendant pertaining to speed, overtaking, signals required, auto's stopping at intersection or crosswalk, and pedestrian's right-of-way at crosswalks. It is said that the jury failed to consider these statutory violations, the pain and suffering, character and extent of the injury and other guidelines for assessing exemplary or punitive damages, and that these guidelines must be considered by the jury in order to determine a fair and just award for exemplary damages.

Plaintiff's second contention, namely that the court erred in failing to award a new trial for damages only because the jury arbitrarily abused its discretion in the assessment of damages, presents a very similar issue.

Quite recently this court decided *Olson v. Fleetwood* (1969), 116 Ill. App.2d 411, in which similar contentions were made. In *Olson v. Fleetwood*, plaintiff appealed from an order of the trial court that denied a post-trial motion for a new trial as to damages only. There the plaintiff, while driving her auto, was struck in the rear by an auto driven by the defendant and plaintiff suffered a whiplash injury to her neck. She testified that, at the time of the trial, she was continually suffering pain in her neck, back and legs, and was unable to do any heavy work. Her out-of-pocket expenses were $2,278.90, and the jury returned a verdict in her favor and assessed the damages in the sum of $2,500.00. Judgment was entered on the verdict. She maintained, on appeal, that the verdict was grossly inadequate and against the manifest weight of the evidence in that it failed to fairly compensate her for all proven elements of damage. In that case, we considered whether the verdict was, in fact, inadequate and stated, pp. 417, 418:

"There is a deplorable lack of consistency in the reported cases on the question of inadequate verdicts in personal injury cases. It seems fairly well settled that a verdict in an amount less than the proven out-of-pocket expenses of the plaintiff is patently inadequate. *O'Brien v. Howe*, 30 Ill.App.2d 419, 174 N.E.2d 905; *Stroyeck v. A. E. Staley Mfg. Co.*, 26 Ill.App.2d 76, 167 N.E.2d 689.

In most other cases, the assessment of damages in personal injury suits is left to the jury and will not be disturbed on review unless it appears that the jury was improperly instructed or the verdict was a result of passion or prejudice. *Lazzaro v. Garrett*, 100 Ill.App.2d 452, 242 N.E.2d 59; *McManus v. Feist*, 76 Ill.App.2d 99, 221 N.E.2d 418; *Ward v. Chicago Transit Authority*, 52 Ill.App.2d 172, 201 N.E.2d 750.

It is not contended here that the jury was not properly instructed or that the plaintiff was denied a fair trial but only that the margin between the verdict and the out-of-pocket expenses was so slender as to indicate in itself that the jury did not consider all of the elements of damage.

We cannot agree with that contention. The award is not high and it is true that another jury might have returned a verdict for a higher sum. However, there is nothing to indicate that the jury did not consider all items of damage and, having done so, the assessment of the actual loss was within its discretion.

In *Mineiko v. Rizzuto*, 65 Ill.App.2d 35, 212 N.E.2d 712, cited by the plaintiff, the court concluded that the jury misunderstood the evidence relating to the plaintiff's loss of wages and the injuries in *Wihr v. Bruno's Appliances, Sales & Service*, 29 Ill.App.2d 145, 172 N.E.2d 633, were of far greater severity."

In the presence case, as was true in the *Olson* case, there is no error claimed in instructing the jury nor is it claimed that the verdict was the result of passion or prejudice.

Also, quite recently, this court in *Railkar v. Boll* (1969), 109 Ill.App.2d 277, held that, when the evidence showed that plaintiff was hospitalized for leg injuries and operated on twice, as the result of an accident where plaintiff was a pedestrian and defendant was a motorist, a jury award of $5,000.00 for the plaintiff was not inadequate although the out-of-pocket medical expenses were $3,892.00. There the testimony as to permanency of injury was speculative and the evidence as to lost earnings was conjectural. In our case, there is no testimony that, to a reasonable degree of medical certainty, the plaintiff had permanent injuries. The plaintiff has cited *Keel v. Compton* (1970), 120 Ill.App.2d 248, to support his contention that a new trial should be granted on the issue of damages only. In that case, a death action, the jury awarded $5,000.00 for pecuniary loss to next of kin. The evidence was that Keel, the deceased, was in good health on the date of his death, earned more than $6,000.00 in each of the two years preceding his death and undoubtedly would earn $18,000.00 before being retired. The court held that, based on those facts alone, it did not see how the award of $5,000.00 bore any relationship to

the pecuniary injury, as it bore no relation to one of the proved elements which the jury was required to consider. Such is not the case here.

Plaintiff's Instruction No. 12, I.P.I. 35.01, which was given, is as follows:

"If you find that the defendant was guilty of wilful or wanton conduct, which proximately caused injury to the plaintiff *and if you believe that justice and the public good require* it, you *may,* in addition to any damage to which you find plaintiff entitled, award plaintiff an amount which will serve to punish the defendant and to deter others from the commission of like offenses." (Emphasis added.)

We have found no case in Illinois which would indicate that a jury must award punitive or exemplary damages in a personal injury case founded on the defendant's wilful or wanton conduct.

Despite plaintiff's contentions, a review of the record reveals that there is nothing to indicate that the jury did not consider all of the items of damage and abused its discretion in assessing the loss. Likewise, the trial court did not err in refusing to grant post-trial relief because the jury failed to award the plaintiff a sufficient sum for exemplary or punitive damages. The judgment of the trial court is affirmed.

Judgment affirmed.

SEIDENFELD and GUILD, JJ., concur.