Gust A. Kallas, Plaintiff-Appellant, *v.* Jeanne R. Lee, Defendant-Appellee.

(Nos. 59180, 59449 cons.; )

First District (1st Division)—September 3, 1974.

Ward, Lussier & Dee, of Chicago (John Munday, of counsel), for appellant.

Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago (Leonel I. Hatch, Jr., D. Kendall Griffith, and Stanley J. Davidson, of counsel), for appellee.

Mr. JUSTICE BURKE delivered the opinion of the court:

Plaintiffs initiated a complaint for alleged injuries and damages sustained as a result of a motor vehicle mishap. Robert H. Lee was dismissed from the case on plaintiffs' motion. At the conclusion of the trial, the jury returned a verdict upon which judgment was entered in the amount of $15,000 in favor of plaintiff, Gust A. Kallas, and against defendant, Jeanne R. Lee. Plaintiff Kallas appeals from that judgment.

Defendant Jeanne R. Lee was called as an adverse witness pursuant to section 60 of the Civil Practice Act. (Ill. Rev. Stat., 1973, ch. 110, par. 60.) She testified that at about 8 A.M. on January 29, 1968, she was involved in an automobile mishap at the intersection of Golf Road (Route 58) and Route 83. Defendant testified that the weather was overcast and rainy and the road surface near the site of the occurrence was wet. At the time defendant was traveling northbound on Route 83 which has two lanes northbound and two lanes southbound at the intersection with Route 58. There were traffic control signals located on the four corners of the intersection. As defendant approached approximately one block from the intersection of Routes 58 and 83, she was traveling in the right-hand lane at about 25 miles per hour. Defendant was following the northbound traffic which she stated was continuous, heavy traffic. Defendant did not see or recall the color of the traffic signal at Route 83 at any time prior to entering the intersection. Prior to the occurrence, defendant saw a "big huge yellow object" moving toward her. At the time defendant saw the "object" her vehicle was traveling at between 25 to 30 miles per hour and she had entered the intersection. Defendant testified that the yellow object was traveling in an easterly direction on Route 58 and it collided with her car.

Marion Krawczyk was called as a witness on behalf of plaintiff and testified that on January 29, 1968, he was employed by the State of Illinois. At the time of the accident, he was driving "a ton and half" dump truck owned by the State of Illinois and he had two passengers in the truck, Joseph Levatino, who was seated in the middle, and plaintiff Kallas, who was seated on the passenger side of the truck. The weather was misty and the pavement wet. Prior to the collision Mr. Krawczyk was driving in an easterly direction on Route 58 at approximately 25 to 30 miles per hour. Prior to and during the time the truck entered the intersection, the traffic signal for east and westbound traffic on Route 58 was "green." As he was entering the intersection, the witness saw a car which was traveling northbound on Route 83 at approximately 40 to 50 miles per hour. When he observed this vehicle, Mr. Krawczyk tried to stop and cut his truck wheels "to the right to try to avoid the direct hit." The vehicles collided in the middle of the intersection. After

the collision, Mr. Krawczyk observed the plaintiff lying unconscious on the pavement with his head "split open."

Plaintiff Kallas testified that on January 29, 1968, he was employed as a laborer by the State of Illinois. Mr. Kallas testified that on the date of the occurrence, he started work at 7:30 or 8 A.M. and that he was riding in a truck owned by the State of Illinois. The truck was being driven by Marion Krawczyk. Joseph Levatino was also riding in the vehicle. Plaintiff did not remember the facts and circumstances concerning the occurrence; his first memory was when he awoke in Holy Family Hospital in Des Plaines. Plaintiff testified that when he awoke, he noticed that his head was bandaged and there were cuts on his face. Plaintiff testified that while he was in the hospital, he saw two doctors, Dr. Bederman and Dr. Duffy.

After plaintiff was discharged from the hospital, he experienced numbness in the front and top of his head, dizzy spells, pain in his left shoulder, left knee and back, and had to urinate an excessive number of times during the nights. Plaintiff described in detail the actions he took and the treatment he received in order to alleviate these conditions. Plaintiff testified that after the accident, he did not return to his former employment and that he went to work as a county traffic surveyor.

Wilburt H. Gransen was called as a witness on behalf of plaintiff and testified that on the morning of this occurrence, he was driving in a southerly direction on Route 83. When he arrived at the intersection of Route 83 and Route 58, he stopped because the traffic signal located on the west. corner facing him was "red." The witness testified that there were four stoplights, one on each corner of the intersection. Mr. Gransen's vehicle was the first car in line at the intersection and at the time the traffic signal for southbound traffic was red, he observed a northbound vehicle enter the intersection. The witness also observed an eastbound State of Illinois truck approaching the intersection of Route 58. The truck collided with the northbound automobile and at the time of the collision, the traffic signal for southbound traffic was "red."

On cross-examination, Mr. Gransen testified that he did not observe the traffic signal on the northbound side of Route 83 and did not know whether the signal was functioning.

Plaintiff argues on appeal that the trial court erred in refusing to admit photographs taken by plaintiff's treating physician depicting a laceration to plaintiff's head. The photographs which plaintiff refers to are marked as plaintiff's Exhibits No. 3 and 4 for identification and are color photographs depicting plaintiff's head and an evulsion flap in the middle portion of plaintiff's head. Defendant objected to the admission of these exhibits on the basis that they were "too gruesome" and that

their admission would be prejudicial. The trial court sustained defendant's objection and expressed the opinion that admission of the photographs "would inflame and influence the passion and prejudice of the jury."

■■ As this court stated in *Darling v. Charleston Community Memorial Hospital*, 50 Ill.App.2d 253, 321, 200 N.E.2d 149, 183:

> "If evidence of this type has a reasonable tendency to prove some material fact in issue, such evidence may properly be admitted, and the question is one properly within the discretion of the Trial Court; if a photograph is accurate, properly identified, and relevant, the mere fact it may have a tendency to prejudice the jury is not sufficient to justify its exclusion; it is a matter within the Court's discretion: Pitrowski etc. v. New York C. & St. L. R. Co. (1955), 6 Ill.App.2d 495, 128 N.E.2d 577. * * * Evidence having a natural tendency to establish the facts in controversy should be admitted; competent evidence may not be excluded merely because it might arouse feelings of horror or indignation in the jury; questions as to the character of the evidence offered, and the manner and extent of its presentation, are largely within the discretion of the Trial Court, and the exercise of that discretion will not be interfered with unless there has been an abuse to the prejudice of the defendant: People v. Jenko (1951), 410 Ill. 478, 102 N.E.2d 783."

In *Darling*, this court upheld the propriety of admitting a photograph which depicted plaintiff's leg prior to amputation, and in so ruling observed:

> "A photograph of this type may be proper to give the jury a better understanding of the medical terminology in evidence and the demonstrative evidence which could not be completely expressed by the written or spoken word: People v. Donaldson (1956), 8 Ill.2d 510, 134 N.E.2d 776. And see: People's Gas Light & Coke Co. v. Amphlett (1900), 93 Ill.App. 194; McNally v. Chauncy Body Corp. (1942), 315 Ill.App. 190, 42 N.E.2d 853." 50 Ill.App.2d at 321.

■■■ In the present case, we have examined the photographs and do not believe that they are of such a nature as to unduly cause prejudice or inflame the jury's passion. The photographs vividly and accurately depict the injury which plaintiff sustained and were relevant to the issue concerning the nature and severity of plaintiff's injury and the resultant pain and suffering. Moreover, we are of the opinion that the utilization of demonstrative evidence in cases such as the present case should be encouraged. Plaintiff's injury was sustained on January 29,

1968, and the case was tried more than 3 years later. During this period of time plaintiff's injury healed considerably and his physical condition was substantially different than at the time he sustained the injury. Under these circumstances, we are of the opinion that it would have been beneficial if the jury had the opportunity to view these photographs.

■■ However, in the present case we cannot say that the trial court's refusal to admit the photographs constituted an abuse of discretion resulting in prejudice to plaintiff. The nature and extent of plaintiff's laceration was graphically described to the jury by the plaintiff's treating physician, Dr. Stuart S. Bederman, who stitched the wound in plaintiff's head and attended plaintiff until the wound healed. Dr. Bederman described in detail the injuries which the photographs portrayed and stated that when he examined plaintiff, he determined that plaintiff had an extensive (large) laceration of the scalp; that the laceration was a very large cut across the very top of the scalp, through the hairline, through the complete thickness of scalp, down to the bone; that the laceration was approximately 9 inches in length and 3 or 4 inches in width; that the edges of the laceration were separated; that when the edges separate there is a certain elasticity to the skin and muscles which will separate and make the wound gape. Dr. Bederman further testified that the scalp had lifted off from the skull and formed a flap; that he was able to observe the skull underneath the flap; that he was able to recognize on the skull beneath the flap a fracture of the outer table of the skull, which was "depressed." The witness explained how he cleansed the wound with sterile salt solutions, washed it so as to get all the debris and dead tissue out and then sutured the wound. Dr. Bederman also testified that he noticed a subarachnoid hemorrhage which means that portions of the film around the brain were filled with blood. In addition, during the closing argument plaintiff's counsel utilized the testimony of the doctor and vividly described plaintiff's injury.

The jury thereafter found in behalf of plaintiff and rendered a verdict in the amount of $15,000. From our examination of the record, we believe that the jury, based upon Dr. Bederman's detailed description and plaintiff counsel's thorough recapitulation of plaintiff's injury, appreciated the nature and extent of the laceration and the pain and suffering associated with this injury.

Plaintiff argues that the trial court erred in not directing a verdict in favor of plaintiff and against defendant on the issue of liability. In support of his argument, plaintiff relies upon the rule enunciated by the Illinois Supreme Court in *Pedrick v. Peoria & Eastern Ry. Co.*, 37 Ill.2d 494, 510, 229 N.E.2d 504, 513-14, wherein the court stated:

"[V]erdicts ought to be directed * * * only in those cases

in which all the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand."

The evidence in the instant case, viewed in its aspect most favorable to the defendant, indicates that the weather was overcast and rainy on the day of the collision; that the traffic on Route 83 upon which defendant was driving was continuously heavy; that defendant's speed was under the posted limits; that prior to entering the intersection defendant did not see or recall the color of the traffic signal for northbound traffic on Route 83; and that she did not observe the truck in which plaintiff was riding until her vehicle was already into the intersection. Additionally, there was no direct testimony that the precise traffic signal which defendant would have observed was "red" at the time of the accident. ■■■ If the traffic signal directing defendant was "red" and despite this fact defendant proceeded into the intersection, she would have been in violation of section 11—306(c) of the Illinois Vehicle Code (Ill. Rev. Stat. 1973, ch. 95½, par. 11—306(c)). However, even if defendant was guilty of a violation of this statute, it does not follow that she was ipso facto guilty of negligence as a matter of law. The violation of a section of the Motor Vehicle Act is only prima facie evidence of negligence. (*Wegener v. Anna*, 11 Ill.App.3d 316, 296 N.E.2d 589.) The violation is a factor in considering the actions of the motor vehicle operator. (*Savage v. Blancett*, 47 Ill.App.2d 355, 198 N.E.2d 120.) Generally, the question of whether the violation coupled with other factors constitutes negligence is a matter for determination by the trier of fact. (*Wegener v. Anna*, 11 Ill.App.3d 316, 296 N.E.2d 589.) It was the function of the jury to determine whether the violation, if any, constituted negligence in view of the other relevant facts. Under these circumstances the trial court did not err in refusing to grant plaintiff's motion for a directed verdict on the issue of liability.

Plaintiff argues that counsel for defendant committed reversible error by his remarks made during his closing argument. In the course of plaintiff's closing argument, his counsel asked the jury to return a verdict in the amount of $75,000 plus compensation for the time plaintiff lost from work.

Thereafter, during defendant's closing argument, the following transpired:

Defendant's Counsel: "Counsel has asked you for astronomical sums here for injuries which really don't exist anymore. He asked you for $3,500 on one count, and he tells you all about those things that the man suffered while he was in the hospital for some sixteen days, and the disability that he has, and he asked for some more

sums after that, and instead of getting $6,500 like they add up to, he comes up with a total of $75,000. Then he wants to add the out-of-pocket expenses to that *so I suggest that you have been subjected to a grossly exaggerated amount and request here. If a fair comment has any place in your consideration, I would suggest that he asked for 40 or 50 times what he really expects you to award this plaintiff—*"

Plaintiff's Counsel: "Objection, and I ask that those remarks be stricken."

The Court: *"That's an opinion which he has, and he can state anything which can be inferred from the evidence."*

Defendant's Counsel: "The fact is, ladies and gentlemen, that his actual expenses in this case as I have calculated—and I think I have been fair about this—are $6,508, and if you're going to find against my client, I think no more than twice that amount would fairly compensate for his pain and suffering, for his disability, and for any other things that he's had."

(The italicized portions of the above colloquy are the specific designations of error alleged by plaintiff.)

Plaintiff maintains that defense counsel's comment had no basis in the evidence, that there was no foundation or support in the record indicating what amount of money plaintiff's attorney expected to receive in damages and the comment did prejudice the jury against plaintiff and his attorney.

As this court stated with respect to closing arguments in *Maguire v. Waukegan Park District*, 4 Ill.App.3d 800, 805, 282 N.E.2d 6, 9-10:

"Counsel cannot state matters not in evidence, but can urge all reasonable inferences and conclusions which may be properly drawn from the evidence and wide latitude should be allowed. (*Mattice v. Klawans* (1924), 312 Ill. 299, 309; *Anderson v. Universal Delta* (1967), 90 Ill.App.2d 105, 111; *Turkey v. Callos* (1969), 112 Ill.App.2d 213, 219; *Forslund v. Chicago Transit Authority* (1956), 9 Ill.App.2d 290, 305.)"

During closing argument, counsel can state the amount of compensation he deems proved and warranted under the evidence. *Turner v. Wallace*, 71 Ill.App.2d 160, 217 N.E.2d 11; *Caley v. Manicke*, 24 Ill.2d 390, 182 N.E.2d 206.

■■ We are of the opinion that it was permissible for defense counsel to state his conclusion that plaintiff's claim was for a "grossly exaggerated amount." Such a holding we believe is in consonance with the rule that wide latitude should be afforded counsel in urging reasonable inferences and conclusions during closing argument. However, we are

of the opinion that defense counsel's statement that "he [plaintiff's counsel] asked for 40 or 50 times what he really expects you to award this plaintiff" was improper argument and the trial court should have sustained plaintiff's objection thereto. There is no evidence in this record indicating what amount plaintiff's counsel "really expected the jury to award plaintiff" and therefore defense counsel's statement constituted an impermissible conclusion.

■■ This error was harmless. It is significant that during the closing argument defense counsel conceded that if the jury found against his client, a verdict not in excess of $13,016 would fairly, in his opinion, compensate plaintiff. As we have previously observed, the jury ultimately decided in favor of plaintiff and awarded damages in the amount of $15,000. Under these circumstances there was no prejudice to plaintiff.

Plaintiff also argues that the trial court committed reversible error in overruling plaintiff's objection to defense counsel's closing argument. We have indicated that the court should have sustained the objection relating to the argument as to the amount of money plaintiff's counsel expected the jury to award. We do not believe that the manner in which the court overruled plaintiff's objection lent support to defendant's improper argument. We do not perceive any resultant prejudice to plaintiff.

Plaintiff also argues that the verdict was so grossly inadequate so as to require a new trial on the issue of damages.

■■ The compensation to be awarded for personal injuries is a question of fact for the jury and if the jury has been correctly instructed as to the elements measuring damages and if there is no showing that the size of the verdict is the result of either passion or prejudice or the result of the jury having overlooked an element of damages, then the amount awarded will not be disturbed on review. *Maguire v. Waukegan Park District*, 4 Ill.App.3d 800, 282 N.E.2d 6; *Lazzaro v. Garrett*, 100 Ill. App.2d 452, 242 N.E.2d 59; *Wisnawski v. Hungerford*, 132 Ill.App.2d 96, 267 N.E.2d 507.

In the present case, the jury was properly instructed as to the elements of damage and there is no showing that any element was overlooked by the jury. There is no indication that the size of the verdict is the result of either passion or prejudice. The verdict of $15,000 is not so palpably inadequate as to justify interference by this court.

For these reasons, the judgment is affirmed.

Judgment affirmed.

EGAN, P. J., and HALLETT, J., concur.