LINDA CARLASARE, Plaintiff-Appellant, v. GARY G. WILHELMI *et al.*,
Defendants-Appellees.

First District (5th Division)   No. 84—0176

Opinion filed June 7, 1985.

A. Denison Weaver, of Chicago, for appellant.

Victor J. Piekarski and Michael Resis, both of Querrey, Harrow, Gulanick & Kennedy, Ltd., of Chicago, for appellee Gary G. Wilhelmi.

Wildman, Harrold, Allen & Dixon, of Chicago, for appellee Bhaskar Patel.

PRESIDING JUSTICE MEJDA delivered the opinion of the court:

Plaintiff, Linda Carlasare, brought suit for injuries sustained when a vehicle driven by defendant, Gary Wilhelmi, collided with a vehicle operated by a second defendant, Bhaskar Patel. A jury found both defendants liable. Plaintiff was awarded $65,000 in damages. Plaintiff appeals from the judgment entered on the jury verdict and from an order denying her post-trial motion seeking a new trial on damages. Plaintiff contends on appeal that: (1) defense counsel's comments during closing argument that plaintiff was really seeking one-fifth of the damages asked for and that plaintiffs' lawyers always seek five times more than they are entitled to were prejudicial; (2) defendant Patel's counsel's comments in closing argument that plaintiff had not presented evidence of disability because there was nothing she could do before the accident that she could not do after the accident were prejudicial; and (3) the jury's award of $65,000 was against the manifest weight of the evidence because it does not reflect an award for plaintiff's disability. We affirm.

Plaintiff was injured in an automobile accident in which she was a passenger in a vehicle driven by Wilhelmi. The automobile in which she was riding collided with other vehicles, which were unoc-

cupied, in two northbound lanes of I-55. One of these unoccupied automobiles was owned by Patel.

At trial, the following evidence was presented concerning plaintiff's injuries. Plaintiff was taken to a hospital emergency room after the accident. When she awoke there, her face was bandaged, she could not hear out of one ear and her right eye was swollen shut. During this initial hospital stay, a Dr. Tsai performed an operation on her face. Plaintiff had double vision, severe headaches, her face was sore and swollen, and her left arm and leg were sore when she was discharged.

Dr. Charles Janda, a specialist in plastic reconstructive surgery, first examined the plaintiff a few weeks after the accident. She complained of double vision and numbness on the right side of her nose and upper lip. Dr. Janda found that she had some numbness on the right side of her nose and that she was unable to elevate her right eye to look up at the ceiling. Dr. Janda's diagnosis was that plaintiff had a severe fracture of the right orbit, or eye socket, and a strong likelihood of a skull fracture. Immediately after, he performed an operation to repair the nose fracture and to elevate the floor of the right eye socket to its correct position. The operation corrected plaintiff's double vision straight ahead but not up and down.

Because plaintiff began having difficulty picking up objects, Dr. Janda referred her to a neurologist, Dr. Helge Frank. Dr. Janda stated that Dr. Frank found that she had a cerebral concussion with possible contusions of the brain stem, that the eye flickered back and forth when she looked up and that she experienced mixed double vision in all fields of gaze except straight forward. In Dr. Janda's opinion, plaintiff's condition is permanent and she still has double vision in all vision fields except straight ahead. She also had difficulty at one time breathing through her nose. Surgery was performed to repair the obstructions to her breathing.

Dr. Janda referred the plaintiff to Dr. Eugene Folk, an opthamologist and a specialist in muscle surgery. He diagnosed plaintiff as having suffered a blowout fracture of the eye socket with a resulting weakness of the muscles that elevate and depress the eye. Because she could not move her right eye downward, he prescribed prism glasses which enabled her to read in the down position. Dr. Folk ruled out further surgery because the eye had adapted and because more surgery might create additional problems. In his opinion, plaintiff's vision is 100% impaired in her binocular, or single, vision and her condition is permanent.

Dr. Theodore Zekman, an opthamologist, examined plaintiff at

the request of Wilhelmi's counsel. He found paralysis in the right eye which is uncorrectable through surgery. He also found that plaintiff has double vision in all vision fields but that it is very slight when she looks straight ahead. Her double vision is most evident when she looks downward and when she is tired. During cross-examination, Dr. Zekman testified that contrary to a written report he prepared prior to trial, plaintiff's condition is not permanent. He explained that he had not meant his report to imply that plaintiff's condition is permanent, because if she holds her head at an angle different from normal she could compensate for the double vision.

Plaintiff testified that after the first operation performed by Dr. Janda, there was some improvement in her double vision when she looked straight ahead, keeping her eyes level. She still saw double when she looked up, down or sideways. Plaintiff had headaches, difficulty sleeping and nightmares about the accident. After the operation on her nose, she was able to breathe through her nose without difficulty. At trial she stated that she had not completely regained her senses of smell or taste. However, her deposition testimony stated that she no longer had any problem with her sense of smell. After being fitted with prism glasses, she was able to read.

Plaintiff was able to make up her college examinations and complete the school year. At the beginning of the next school year, she accepted a job as a lifeguard for two hours a week. She held this job for 1½ years. She graduated with her class, earning a degree in public health. At the time of trial, she was employed in her field. Plaintiff has a driver's license and is able to operate an automobile. She is not as capable as she was prior to the accident in athletics, such as softball and tennis. Plaintiff testified that she had lost $885 in wages and had incurred $10,500 in medical expenses due to the accident.

In closing argument, plaintiff's counsel argued that although she had recovered reasonably well from the various fractures and lacerations, she still suffered from double vision which would be with her for the remainder of her life. Plaintiff's attorney suggested that "something in the neighborhood of $275,000 to $300,000" would reasonably compensate her.

Defendant Wilhelmi's counsel in closing argument argued: "We have a big boxcar figure. That is the figure of $250,000. And what really is looked for is about a fifth of that. That is the figure, but start high. The 250 is not compensation that she is entitled to." Referring to another plaintiff (whose case was consolidated for trial), he argued: "Now what is the sum for that? $150,000. Again an at-

tempt. \*\*\* Again, you see the ploy. Make it high. Divide that by five."

Defendant Patel's counsel made a similar argument:

"Now, you know, plaintiffs' lawyers love to hear defense lawyers talk about damages. They love to hear that because they figure it always makes us look callous or cruel or hardhearted, and I suppose it is for that reason that plaintiffs' lawyers always feel justified in asking for five, six, seven times more than they think they are really entitled to."

The trial court sustained the objection of counsel for another plaintiff, cautioning against attacks on the credibility of the attorneys, and counsel for Patel apologized. Counsel for Patel argued further that the instant plaintiff had presented no evidence of a disability and that there was no testimony regarding anything she could do before the accident that she could not do after the accident.

The jury returned a verdict for the plaintiff finding Patel 35% liable and Wilhelmi 65% liable. Plaintiff was awarded $65,000 in damages. The trial court entered judgment on the verdict and later denied plaintiff's post-trial motion for a new trial on damages. Plaintiff appeals, seeking a new trial on damages only.

OPINION

■ We first consider whether the comment of Patel's counsel during closing argument prejudiced plaintiff's case and whether this issue is waived by plaintiff's failure to raise it in her post-trial motion. Plaintiff argues that defense counsel's statement that plaintiffs' lawyers always ask for five, six or seven times more than they are entitled to was highly prejudicial. Patel contends that plaintiff waived appeal on this issue by failing to raise it in her post-trial motion. If the issue is not waived, Patel maintains that the trial court sustained the objection of one of the other plaintiffs, thereby curing any prejudicial effect of the statement as to the plaintiff herein.

It is well settled that a party appealing from the denial of a post-trial motion cannot raise for the first time on appeal points omitted from the motion. (*Brown v. Decatur Memorial Hospital* (1980), 83 Ill. 2d 344, 348-50, 415 N.E.2d 337.) Even if preserved for review, prejudicial remarks are cured by an immediate sustained objection. (*Wright v. Yellow Cab Co.* (1983), 116 Ill. App. 3d 242, 254, 451 N.E.2d 1313.) Plaintiff's post-trial motion does not refer to the remark of Patel's counsel now raised on appeal. The issue therefore is waived. Furthermore, the trial court sustained the objection to said argument and cautioned counsel about making attacks on oppos-

ing counsel's credibility, thereby curing any prejudice that may have resulted.

◼ Next we address the issue of whether the remarks of Wilhelmi's counsel in closing argument were prejudical and whether plaintiff's failure to object to these comments resulted in a waiver of this issue. Plaintiff argues that defense counsel's comments that plaintiff was seeking only about one-fifth of the damages asked for and that asking for five times what plaintiff is entitled to is a "ploy" generally engaged in by plaintiffs' lawyers were highly prejudicial. Wilhelmi contends that plaintiff's failure to object waived consideration of whether any error may have resulted. Plaintiff counters, arguing that she refrained from objecting because she did not wish to emphasize the statements.

Generally, failure to object waives any alleged error. (*Kenny Construction Co. v. Hinsdale Sanitary District* (1982), 111 Ill. App. 3d 690, 700, 444 N.E.2d 510.) However, if the comments are so inflammatory and prejudicial that plaintiff is denied a fair trial, the waiver rule should be relaxed. (*Stambaugh v. International Harvester Co.* (1982), 106 Ill. App. 3d 1, 22, 435 N.E.2d 729, *rev'd on other grounds* (1984), 102 Ill. 2d 250, 464 N.E.2d 1011.) Plaintiff argues that she was prejudiced by these comments, citing *Kallas v. Lee* (1974), 22 Ill. App. 3d 496, 317 N.E.2d 704, in support of this argument. In *Kallas*, plaintiff's counsel asked the jury to return a verdict of $75,000 plus compensation for the time plaintiff lost from work. In closing argument, defense counsel suggested that plaintiff's counsel asked for 40 or 50 times what he really expected the jury to award. The trial court overruled an objection by plaintiff's counsel. The appellate court held these comments improper because there was no evidence in the record indicating what amount plaintiff's counsel "really expected the jury to award plaintiff" and constituted an impermissible conclusion. (22 Ill. App. 3d 496, 504, 317 N.E.2d 704.) The appellate court stated that the trial court should have sustained the objection but held that the error was harmless under the circumstances. The court found significant defense counsel's concession during closing argument that if the jury found against the defendant, a verdict not in excess of $13,016 would fairly compensate the plaintiff and the fact that the jury ultimately awarded plaintiff $15,000 in damages.

As in *Kallas*, in the instant case there is no evidence in the record that plaintiff looked for only about one-fifth of the damages sought or that this was a "ploy" engaged in generally by plaintiffs' attorneys to ask for five times what they think a plaintiff is entitled

to. These remarks, therefore, similarly constitute improper argument. We think, however, that this error is harmless. Although we do not condone defense counsel's statements, we are unable to say the remarks are so prejudicial as to constitute reversible error. It is well established that the determination of whether the comments of counsel are prejudicial to the right of a party to receive a fair trial is a matter resting in the sound discretion of the trial court. (*Greig v. Griffel* (1977), 49 Ill. App. 3d 829, 844, 364 N.E.2d 660.) Its ruling, therefore, will not be disturbed unless there is a clear abuse of discretion. (49 Ill. App. 3d 829, 844, 364 N.E.2d 660.) In this case, the error of which plaintiff complains was brought to the attention of the trial court in plaintiff's post-trial motion. The trial court heard the comments and arguments and observed the effect of those remarks upon the jury and was in a better position to measure the prejudicial effect, if any, of defense counsel's remarks. (*Greig v. Griffel* (1977), 49 Ill. App. 3d 829, 844, 364 N.E.2d 660; *Galluccio v. Hertz Corp.* (1971), 1 Ill. App. 3d 272, 280, 274 N.E.2d 178.) In this instance, we find no abuse of discretion.

■ The second issue raised is whether plaintiff was prejudiced by the remarks of Patel's counsel during closing argument that plaintiff had not presented evidence of a disability because there was nothing she could do before the accident that she could not do after the accident. Plaintiff contends that there was uncontradicted evidence that she suffered a permanent loss of her binocular vision and that defense counsel misrepresented the evidence. Patel asserts that plaintiff failed to make a timely objection, thereby waiving the issue. In the event that plaintiff preserved her objection, Patel argues that the remarks were a permissible comment on the evidence.

Our review of the record reveals that plaintiff registered no objection to this argument and waived the issue. Even if plaintiff had preserved her objection, we find no error in counsel's comments. Counsel cannot state matters not in evidence, but can urge all reasonable inferences and conclusions which may be properly drawn from the evidence and wide latitude should be allowed. (*Tonarelli v. Gibbons* (1984), 121 Ill. App. 3d 1042, 1049, 460 N.E.2d 464; *Champion v. Knasiak* (1974), 25 Ill. App. 3d 192, 203, 323 N.E.2d 62.) In our view, defense counsel was simply arguing a reasonable inference or conclusion from the evidence. Plaintiff testified that she drives a car, that she completed her college education, graduating with her class, that she participates in physical activities she engaged in prior to the accident and that she is employed. Defense counsel's argument that disability means not being able to do something and that

plaintiff had not testified that she was unable to do anything after the accident that she had been able to do before the accident was not unreasonable nor impermissible based on her testimony.

The last issue plaintiff raises is whether the jury's award of $65,000 was against the manifest weight of the evidence because it does not reflect an award for plaintiff's disability. Plaintiff asserts that the jury failed to consider plaintiff's disability and, therefore, the award was against the manifest weight of the evidence. Wilhelmi contends that plaintiff has not complained that the jury was improperly instructed. The jury could have considered that plaintiff could compensate for her vision problems, that she finished school with her class and that she holds down a job with no apparent difficulty. Patel asserts that the jury was properly instructed on the elements of damages, that plaintiff proved only $11,385 in special damages and that $65,000 is a palpably adequate award. He submits that merely because the jury returned less than plaintiff requested does not necessarily mean the jury disregarded the evidence of plaintiff's disability.

The compensation to be awarded for personal injuries is a question of fact for the jury. (*Kallas v. Lee* (1974), 22 Ill. App. 3d 496, 504, 317 N.E.2d 704.) If the jury has been correctly instructed on the elements measuring damages and if there is no showing that the size of the verdict is the result of either passion or prejudice or the result of the jury's having overlooked an element of damages, then the amount awarded will not be disturbed. (22 Ill. App. 3d 496, 504, 317 N.E.2d 704.) Plaintiff has not asserted that the jury was not properly instructed. We have previously determined that defense counsel's comments on the evidence relating to disability were reasonable conclusions based on the evidence. There is no indication that the size of the verdict is the result of passion or prejudice. The verdict of $65,000 is not so inadequate as to justify a new trial on damages.

For the foregoing reasons, the judgment of the trial court is affirmed.

Affirmed.

SULLIVAN and PINCHAM, JJ., concur.