Thomas Raines, Plaintiff-Appellee, v. New York Central Railroad Company, a Corporation, Defendant-Appellant.

**Gen. No. 53,637.**

First District, First Division.

August 17, 1970.

Rehearing denied November 9, 1970.

Lord, Bissell & Brook, of Chicago (Richard O. Olson, Alvin E. Domash, and Richard E. Mueller, of counsel), for appellant.

James A. Dooley, of Chicago, for appellee.

MR. JUSTICE ADESKO delivered the opinion of the court.

This is an appeal from a judgment rendered in the Circuit Court of Cook County which was entered upon a jury verdict in favor of plaintiff in the sum of $750,000. This action was brought under the Federal Employers' Liability Act (45 USC, § 51 et seq.), for the recovery of damages for plaintiff's personal injuries which he incurred while employed as a switchman by defendant. The defendant railroad admitted liability and the case was submitted to the jury solely on the question of damages.

The defendant seeks a reversal and a new trial based upon errors that it asserts were prejudicial to the defendant. Basically, the contention is that the jury's verdict is excessive and that this court must grant a new trial on the issue of damages. Underlying this contention, the defendant asserts that the trial judge erroneously admitted evidence which prejudiced the jury and resulted in the excessive verdict. Furthermore, defendant contends that the trial court erred in refusing to instruct the jury as to the fact that the plaintiff's award would not be subject to income tax and that the trial court improperly refused to grant a mistrial because of the alleged prejudice resulting from a television broadcast.

Plaintiff contends that the question of excessiveness of the verdict cannot be reviewed by the court and re-

lies upon the case of Hack v. New York, C. & St. L. R. Co., 27 Ill App2d 206, 169 NE2d 372 (1960), where the court discussed the propriety of a State reviewing court's power to consider a question of manifest weight of the evidence in a Federal Employers' Liability Act case. The court stated, at pages 215–16:

> "It has repeatedly been held that a reviewing court in such cases cannot reweigh the evidence. Probably a better statement of that rule would be to say that a reviewing court has no right to consider the evidence and from that consideration determine as to whether or not the verdict of the jury was against the manifest weight of the evidence. The only question presented . . . is as to whether or not there is an evidentiary basis for the jury's verdict, and when such evidentiary basis becomes apparent the appellate court's function is exhausted."

The defendant in Hack was contending that the jury's finding of negligence was erroneous and did not question the amount of the verdict. The Hack case conforms with the decisions in Lavender v. Kurn, 327 US 645 (1946) and Gallick v. Baltimore & O. R. Co., 372 US 108 (1963).

Plaintiff argues that the rule of review with regard to manifest weight questions is equally applicable to a question regarding the excessiveness of the verdict. In this respect, the case of Grunenthal v. Long Island R. Co., 339 US 156 (1968), is relied upon by plaintiff. The United States Supreme Court reversed a Court of Appeals decision which had ordered a remittitur from a jury verdict rendered in a federal district court action under the Federal Employers' Liability Act. The defendant railroad had appealed on the basis of an excessive verdict. The petitioner (plaintiff in the district court) contended that the Court of Appeals had exceeded its powers of review by reasons of the Federal constitutional provision of the Seventh Amendment or that such review was pro-

hibited by the statute itself. The Court did not decide on either ground, expressly holding that the trial judge's action should not have been disturbed since there was no abuse of discretion in accepting the jury's verdict. This was the standard of review relied upon by the Court of Appeals in Grunenthal, which was expressed in Dagnello v. Long Island R. Co., 289 F2d 797 (1961). The Grunenthal decision concluded that on the Court's appraisal of the evidence, the trial court did not abuse its discretion in accepting the jury's verdict.

From the above, it is evident that the contention raised by plaintiff was not decided in any of the above cited cases. The defendant has asserted that the case of Smith v. Illinois Cent. R. Co., 29 Ill App2d 168, 172 NE2d 803 (1960), disposes of this contention. That case expressly held that a reviewing court of this State could decide a question of the excessiveness of a jury's verdict under a Federal Employers' Liability Act case. The appellant railroad contended that the Appellate Court could decide questions of excessive verdicts but could not rule upon the question of the weight of the evidence. This court agreed and reasoned that the reviewing courts of this State followed the common law rule that if a trial court improperly failed to enter a remittitur or grant a new trial, a reviewing court could correct the judgment if warranted. See also Crowley v. Elgin, J. & E. Ry. Co., 1 Ill App2d 481, 117 NE2d 843 (1954). The Smith case stated that the question of an excessive verdict was controlled by the law of the forum as a procedural matter. Further, the Smith case noted that the Federal judiciary would lack the power to pass on the issue due to constitutional prohibition in the Seventh Amendment and that the issue involved a question of fact that was beyond the purview of a federal substantive question.

■ We are of the opinion that the rationale of the Smith case is controlling the issue before this court. We think there is a reasonable distinction that restricts ap-

297

pellate review of a jury's determination as to the manifest weight of the evidence under the Federal Employers' Liability Act, but allows a reviewing court to consider a question of excessive verdict based on common-law principles. We conclude that this court has the power to consider the propriety of the trial court's judgment regarding damages awarded by the jury's verdict. The defendant's contention is that the jury's verdict was the result of passion and prejudice. This court has the power to review the evidence and pass on such a question, regardless of the fact that plaintiff's right of action is based on the Federal Employers' Liability Act.

A brief summary of the facts shows that on May 18, 1967, the plaintiff sustained injuries while engaged in coupling air hoses between a locomotive and boxcar in defendant's railroad yard. The accident resulted in the amputation of both legs. He was taken to a hospital and underwent surgery on May 18, and on several subsequent occasions. The operations performed were initially of an orthopedic nature and later the plaintiff underwent several operations for plastic surgery, consisting of skin grafts. Plaintiff was under continual nursing care and was given various drugs for pain. In July of 1967, the defendant employed a surgeon with the intent of possibly rehabilitating plaintiff by undertaking further operations to fit plaintiff with prostheses. Plaintiff refused such treatment and was eventually discharged on August 18, 1967. Defendant has paid all expenses of treatment up to the date in July, when plaintiff refused treatment as to the artificial limbs.

Approximately one year later, trial was held on the issue of damages. Evidence was presented by medical testimony of plaintiff's past, present and future condition relating to rehabilitation, to the permanent nature of his injuries and to his pain and suffering. Testimony was produced concerning the plaintiff's family consisting of a wife and three children, his educational history and his

work record. His employment with defendant commenced on April 29, 1967, as an extra board switchman, in which he earned $330.56 up to the date of his accident on May 18, 1967. His prospects for future earnings as an employee were examined. Evidence of his past and future medical expenses was introduced. The record discloses that both parties presented a great deal of expert testimony from medical and economic witnesses regarding the amount of damages that the plaintiff was entitled to by reason of this occurrence. The testimony dealt with aspects of past and future loss of wages. Both parties introduced testimony regarding the most advantageous economic means to compensate plaintiff in damages. Plaintiff's life expectancy was established as 42.8 years.

With regard to the contention that improper evidence was admitted, the defendant asserts that improper testimony as to the future of economic inflation and testimony regarding railroad retirement benefits served to arouse the passion and prejudice of the jury in arriving at the damage award. We will discuss these categories of evidence separately.

The evidence of future inflation was elicited by plaintiff's counsel on direct examination of his own witnesses, cross-examination of defense witnesses and in rebuttal during the trial. The first instances occurred in plaintiff's case-in-chief, when John P. Henderson testified as an economics expert. There was no question as to his qualifications in his profession. The witness testified as to past trends in the economy, describing inflation, the increase in prices and wages, and the devaluation of the purchasing power of the dollar. On direct examination he gave the opinion that the inflationary spiral would continue to affect the price level by an estimated 2–4 percent per year. His reason for this opinion was because of a monetary policy which believes that some amount of inflation was desirable to stimulate prices. He also gave an opinion of the future of interest rates for the next 30

years, stating that a return to a peacetime economy would lower interest rates. Henderson also considered the devaluation of the British pound, which he said would cause the formal devaluation of the dollar after the 1968 election, that would, in turn, cause domestic inflation.

Edward McKinley was called as a witness for the plaintiff. He was an experienced investment banker. He testified as to past trends of inflation and dollar devaluation. He also gave the opinion that the inflationary spiral of increased cost of goods and wages would continue. The rebuttal of Edgar D. Tripple, who was an insurance salesman for a company that promoted annuities, also mentioned aspects of future inflation. Tripple stated that an annuity was not a hedge against inflation, but that variable annuity plans would meet the contingency of future inflation.

Two of the defense witnesses were cross-examined as to the effect of inflation. Thomas C. Smith, who worked in the area of private pension plans, said that estate plans did not consider dollar devaluation nor inflation; also that long-term bond investments would not cope with inflation and that the witness would not buy bonds if prices rose and dollars were cheaper. Similarly, Edward J. Mullen, a professional actuary in the pension field, stated that in annuity computations, no provision is made for inflation except if a variable annuity is used. This testimony from the defense witnesses was in response to an inquiry of plaintiff's counsel as to the subject of inflation.

Defendant argues that the trial court erred in permitting this testimony to be admitted in evidence. The contention is that such testimony is speculative and conjectural, and that it aroused the jury's passion and prejudice in reaching this award. Plaintiff maintains such testimony is competent evidence that serves to give the jury a meaningful standard with which to assess damages. Plaintiff also asserts that the expert testimony

served to describe this economic problem with regard to loss of future earnings and that the concept of inflation is common knowledge which can be considered, even if not proved by evidence.

We think the issue involves a question of first impression in this state. The question is: Whether evidence of future inflationary trends in the economy are admissible to a jury as an element to be considered in assessing damages? Stated another way, is such evidence so speculative and conjectural as to influence a jury's verdict improperly as to damages?

Plaintiff relies upon Grunenthal v. Long Island R. Co., supra, where the United States Supreme Court cited the trial judge's remark that an award for future wages was based on unrefuted testimony regarding steady increases in future wages that were likely to continue. As stated earlier, the decision in Grunenthal involved the question of whether the Federal District Court abused its discretion in approving the award as found by the jury. No issue as to the prejudicial nature of testimony as to future inflation was raised in that decision. The plaintiff's reliance on this case is easily distinguished from the instant case. The cases from other jurisdictions dealing with the question of loss of future earning capacity, where an individual had no present economic base at the time of injury or wrongful death, are also easily distinguishable. In those cases, the injured individual must be considered as having an undetermined future earning capacity that will increase. Thus, speculative evidence is allowed in order to aid the jury in determining what a person's possible earnings might have been. Krohmer v. Dahl, 145 Mont 491, 402 P2d 979 (1965) ; Complete Auto Transit, Inc. v. Reese (Okla), 425 P2d 465 (1967). The above cases do not allow testimony of future economic inflation as an element of damages, since the loss of future wages must be expressed in the present value when the verdict is reached.

Plaintiff seeks to persuade this court by reliance upon the well established rule that a reviewing court will take judicial notice of the decline in purchasing power of money in considering an issue of excessive damages. Downs v. Baltimore & O. R. Co., 345 Ill App 118, 102 NE2d 537 (1952); Howard v. Baltimore & O. C. T. R. Co., 327 Ill App 83, 63 NE2d 774 (1945); Milis v. Chicago Transit Authority, 1 Ill App2d 236, 117 NE2d 401 (1954); Smelcer v. Sanders, 39 Ill App2d 164, 188 NE2d 391 (1963); Braswell v. New York, C. & St. L. R. Co., 60 Ill App2d 120, 208 NE2d 358 (1965). This rule has been recognized as cogent when a party on review seeks to compare other damage awards from the past as relating to damages in a given case. Reviewing courts have used judicial notice of inflation in justifying larger damage awards based on similar factual situations. This is not the issue before us. Similarly, the above rule has been applied to show that a jury may consider the effect of inflation from the date of injury to the date of verdict. The above cases of Downs, et al., do not justify a jury in considering the effect of possible future inflationary trends.

In Harper & James, The Law of Torts, Vol 2, § 25.11 (1956), the problem of inflation as an element of damages has been examined. The authors state that juries have been allowed to consider changes in living cost from the time of an accident to the time of trial. With regard to the consideration of inflation as to future losses, the text states:

> "Greater confusion surrounds present damages for future loss. Future trends in the value of money are necessarily unknown and so always render such damages speculative in a way we cannot escape. If the estimates represent a straight-line projection of present living costs, they will be frustrated by fluctuations either way. If prophecy of change is heeded, frustration will follow if no change, or the

opposite change occurs. When courts have consciously grappled with the problem they have either found all prophecy too speculative and so, perforce, have taken the equally speculative course of betting on a continuance of the status quo; or they have made intuitive and not always very wise judgments that present conditions represent a departure from some imaginary norm to which they think we shall rapidly return. It is not at all clear that courts would be willing to hear experts on the matter, or that they would get much real help if they did. For the most part, the problem—which is inevitably present in every case of future loss—is not analyzed and the present value of money is assumed to be the proper basis."

Other jurisdictions have generally considered evidence of future inflationary trends as speculative, and therefore incompetent evidence for a jury's consideration. In Armentrout v. Virginian Ry. Co., 72 F Supp 997 (1947), the fluctuation of the purchasing power beyond the date of verdict was considered speculative and not proper for the jury's determination of lost future earnings, which should be based on present economic facts. In Zaninovich v. American Airlines, Inc., 26 App Div2d 155, 271 NYS2d 866 (1966), a wrongful death action, the unpredictable nature of future inflation was characterized as "amateurish speculation." Only one case has been found to the contrary. In Henwood v. Moore (Tex), 203 SW2d 973 (1947), a reviewing court considered an issue of excessiveness of verdict. That court, without supporting authority, indulged in the presumption that the devaluation of the dollar would continue and that income taxes would be materially reduced. This presumption was not considered in the context of evidence to the jury.

■ We are of the opinion that the use of evidence concerning future inflationary trends and the questions

concerning the difficulty in hedging inflation were erroneous. Based upon the above examination of authorities, we conclude that such evidence should have been excluded by the trial court. The testimony served to prejudice the jury in its deliberations. Despite plaintiff's assertion that inflation is a matter of common knowledge, the law of this State has always been that certain elements of damages (for personal injuries) must be estimated by the jury at their present value.

Defendant has also complained of evidence introduced by plaintiff regarding retirement benefits. Plaintiff called Emil J. Oravec, a contact representative of the Railroad Retirement Board which administers the Federal Act for railroad employees. This Act serves to substitute for Social Security benefits, in that once a railroad employee has 10 years of service, he is qualified under the Railroad Retirement Act and will no longer be eligible to receive benefits from Social Security. Oravec testified as to the benefits that might be receivable by an individual who continued as a railroad employee for a number of years in the future. The witness also testified as to hypothetical estimates of retirement benefits and of the future contributions that may be made by railroad employees.

The defendant's contention is that such evidence is inadmissible. The cited authorities announce the rule that defendants will not be allowed to introduce railroad retirement benefits to prove such facts as extent of disability, malingering or as mitigation of damages. Eichel v. New York Cent. R. Co., 375 US 253 (1963); New York, N. H. & H. R. Co. v. Leary, 204 F2d 461 (1953), cert denied, 346 US 856. The rule has also been applied to bar a plaintiff from introduction of such evidence to prove an injured party's disability. Gilroy v. Erie Lackawanna R. Co., 279 F Supp 139 (1968). Plaintiff seeks to distinguish these cases because of the purpose for which the

testimony was introduced. Plaintiff's argument is that the loss of a railroad retirement pension was a part of his pecuniary loss as a contingent right to future compensation beyond retirement. The case of Groat v. Walkup Drayage & Warehouse Co., 14 Cal App2d 350, 58 P 2d 200 (1936), allowed evidence of a contingent right to a pension where a police officer had been permanently disabled. The injured party lost his right to a pension which would have accrued in four years from the date of his injury. The contingent right to a pension was considered analogous to loss of future earning capacity.

The Groat case is only persuasive authority and it dealt with a situation where the probability of the accrual of a pension was great. In the instant case, the plaintiff had just begun to work for the railroad. Despite his assertions of his intention to continue as a railroad employee, his work record weighs against such a state of facts. It was undisputed that he would have to work at least 10 years for the railroads before being eligible for benefits. We think there is little similarity of plaintiff's position to that of the plaintiff in Groat, supra. We feel that such evidence was erroneous as being too speculative. Furthermore, we agree with defendant's contention that this evidence was duplicative of other testimony which sought to compensate the plaintiff for lost wages over his life expectancy of 42.8 years, which would encompass his projected years of retirement. Plaintiff could not be entitled to both the compensation for lost earnings and possible retirement benefits by virtue of the pension.

■■ Accordingly, we hold that the trial court committed reversible error in admitting testimony of future inflationary trends and the testimony as to retirement benefits was similarly erroneous. We feel that this testimony prejudiced the jury in their deliberations as to the amount of damages to be awarded to plaintiff. This prejudice will necessitate a new trial on this issue. The

question of the prejudice caused by the television program will be moot on retrial. As to the remaining issue of failing to instruct the jury that the award would not be subject to income tax, we say that such an instruction is not proper.

The judgment of the Circuit Court of Cook County is reversed and the cause remanded for a new trial.

Judgment reversed and remanded.

BURMAN, P. J. and MURPHY, J., concur.