THOMAS G. PRENDERGAST, Adm'r of the Estate of John A. Prendergast, Deceased, Plaintiff-Appellant, v. GERALD COX, Adm'r of the Estate of Henry Garrett, Deceased, *et al.*, Defendants-Appellees.

First District (1st Division)   No. 83—988

Opinion filed October 9, 1984.

---

John Bernard Cashion, of Chicago, for appellant.

Jacobs, Williams & Montgomery, Ltd., of Chicago (C. Barry Montgomery and Barry L. Kroll, of counsel), for appellees.

PRESIDING JUSTICE BUCKLEY delivered the opinion of the court:

Plaintiff, Thomas G. Prendergast, as administrator of the estate

of the deceased, John A. Prendergast, brought a wrongful death action to recover damages resulting from the alleged negligence of the defendants. Following a jury trial, the jury rendered a verdict for plaintiff in the sum of $38,000, which was later reduced by the contributory negligence of the plaintiff to $15,200. Plaintiff appeals the verdict, alleging that the trial court erred in: (1) refusing to permit as an element of damages the loss of society and companionship sustained by the mother of the decedent; (2) refusing to allow as an element of damages the loss of society and companionship sustained by the four adult siblings of the decedent; (3) refusing to allow the loss of accumulation to the estate as an element of damages; and (4) sustaining objections to certain comments by plaintiff's counsel in closing argument.

The record reflects that the decedent was 38 years old when he died in an automobile accident on August 6, 1980. A semitrailer operated by defendants struck his auto on Interstate 294, and the decedent died when fire engulfed his vehicle. The decedent was a bachelor, having never married. At the time of his death, his mother resided with him in the house owned by him. Prior to trial and approximately 1½ years after his death, his mother died. The decedent was also survived by two brothers and two sisters, all of whom were adults at the time of the occurrence. The siblings all resided in the Chicago suburbs and were friendly with each other and the decedent. The two sisters testified that decedent gave them occasional gifts, and all four siblings testified as to various services decedent performed for them, such as home maintenance and repair work.

Decedent was an entrepreneur, engaged in various businesses. He left a will devising all of his property to his brothers and sisters. His net assets totalled $82,603.

I

We turn first to the question of whether the loss of society and companionship suffered by a parent upon the death of an adult child is recoverable under Illinois' Wrongful Death Act. Section 2 of the Wrongful Death Act (Ill. Rev. Stat. 1983, ch. 70, par. 2), which governs all recoveries under the Act, provides in relevant part:

> "[I]n every such action the jury may give such damages as they shall deem a fair and just compensation with reference to the *pecuniary injuries* resulting from such death, to the surviving spouse and next of kin of such deceased person." (Emphasis added.)

Recently, in *Bullard v. Barnes* (1984), 102 Ill. 2d 505, our su-

preme court addressed the issue of whether the parents of a minor child may recover under section 2 of the Wrongful Death Act for loss of society. There, the supreme court noted that of the 23 jurisdictions with statutes or decisional law limiting wrongful death recoveries to pecuniary loss, 14 now allow parental recovery in a wrongful death action for the loss of society of a child. The court then reviewed its own recent decisions, stating:

"In Illinois, too, the trend in our more recent decisions under the Wrongful Death Act has been to expand the scope of pecuniary injury to encompass nonmonetary losses. In *Elliott v. Willis* (1982), 92 Ill. 2d 530, this court quite recently unanimously held, based on a broad definition of pecuniary injury, that a widowed spouse had the right to recover damages for loss of consortium under the Wrongful Death Act. We there relied upon *Hall v. Gillins* (1958), 13 Ill. 2d 26, where the court refused to allow a common law action to recover for 'destruction of the family unit' caused by the death of the father because an adequate remedy already existed under the Wrongful Death Act. This court there stated:

'The term "pecuniary injuries" [found in section 2 of the Wrongful Death Act] has received an interpretation that is broad enough to include most of the items of damage that are claimed by plaintiffs in this case. Each plaintiff alleges deprivation of support *as well as deprivation of the companionship, guidance, advice, love and affection of the deceased.*' (Emphasis added.) 13 Ill. 2d 26, 31.

To the same effect is *Knierim v. Izzo* (1961), 22 Ill. 2d 73, 82-83." (*Bullard v. Barnes* (1984), 102 Ill. 2d 505, 514.)

The supreme court concluded that, in view of its earlier decisions, it would be anomalous to now deny parents recovery for loss of society. The court therefore held that parents are entitled to a presumption of pecuniary injury in the loss of a child's society. (*Bullard v. Barnes* (1984), 102 Ill. 2d 505, 515.) In determining the amount of pecuniary injury, however, a setoff is to be applied for projected child rearing expenses.

The court limited its holding in *Bullard* to the facts before it, stating: "[T]his case does not present, and we therefore need not decide, the question of whether the loss-of-society presumption applies to children who have reached the age of majority." (102 Ill. 2d 505, 517.) However, in a specially concurring opinion, Justice Clark stated:

"I would not limit this opinion to minor children, since I believe the logic embodied in the majority opinion would dictate a

similar result if this case involved a 27-year-old rather than a 17-year-old. In the case at bar, plaintiff's decedent was at a point in his life where his parents could reasonably anticipate receiving advice, companionship and assistance. This presumption is equally valid for adult and minor children." *Bullard v. Barnes* (1984), 102 Ill. 2d 505, 521.

We are in accord with the above reasoning, and do not believe that the age of the child at death should be decisive as to consideration of the loss of society. Nothing in our wrongful death statute suggests such a distinction. The rationale articulated by Justice Clark is particularly appropriate in the instant case where the record reveals that decedent's mother had been living in decedent's house and was dependent upon decedent for advice, companionship and assistance. We conclude that where, as here, the decedent was an adult and unmarried at the time of his death, the loss-of-society presumption, as set forth in *Bullard,* applies. We therefore remand this cause for a new trial as to damages so that the jury can consider as an element of damages the loss of society suffered by the mother of decedent during the period of time she lived following decedent's death.

## II

We next consider whether the adult brothers and sisters of the decedent are entitled to recover damages for loss of society under our Wrongful Death Act. The question of whether such damages are recoverable by siblings was not addressed in *Bullard,* nor in any other Illinois case to date. Plaintiff cites a number of cases from other jurisdictions (*e.g., Jones v. Carvel* (Utah 1982), 641 P.2d 105; *Fussner v. Andert* (1961), 261 Minn. 347, 113 N.W.2d 355). These cases, however, all involve parental recovery for the loss of society of a child, and fail to address the issue now before us.

We are unpersuaded that the current law in Illinois, which allows recovery for loss of society among lineal heirs,[1] should be expanded to permit such recovery among adult siblings or collateral heirs for two basic reasons. First, Illinois courts, in reviewing damages awarded under our Wrongful Death Act, traditionally have recognized that the relationship shared by lineal heirs is special, and have therefore drawn a distinction, for purposes of recovery, between lineal and collateral heirs. The established rule is that if the wrongful

---

[1]If the decedent leaves no spouse or descendants, his parents are his lineal heirs for purposes of recovery under the Wrongful Death Act. *Jung v. Buelens* (1966), 77 Ill. App. 2d 391, 222 N.E.2d 707; 16 Ill. L. & Prac. *Death* sec. 24 (1971).

death action is brought for a surviving spouse or lineal next of kin, the law presumes substantial pecuniary damages arising from the relationship alone, and it is immaterial whether they received pecuniary assistance from the deceased in the past. Where, however, the next of kin are collateral heirs, their pecuniary damages are only such as are proved. (*Howlett v. Doglio* (1949), 402 Ill. 311, 83 N.E.2d 708; *Hall v. Gillins* (1958), 13 Ill. 2d 26, 147 N.E.2d 352; *Rusher v. Smith* (1979), 70 Ill. App. 3d 889, 388 N.E.2d 906; Illinois Pattern Jury Instructions, Civil, No. 31.06 (2d ed. 1971).) Secondly, our supreme court in *Bullard* was cautious in expanding recovery in this particular area of the law. The court explicitly limited its holding to the facts before it, declining to even consider whether the loss-of-society presumption should apply to a child who has attained his majority, and it further applied a setoff for projected child rearing expenses. For these reasons, we refuse to expand the holding in *Bullard* to permit adult siblings to recover for loss of society.

## III

Plaintiff next argues that the trial court erred in refusing evidence and argument relating to the loss of accumulation to the decedent's estate. A jury instruction tendered by plaintiff included as an element of damages the "loss of the reasonable value of the accumulation which would have been added to the estate, and left by the decedent, but for his death on August 6, 1980." The trial court refused the instruction and granted defendants' motion *in limine* prohibiting evidence as to this issue.

We find no error in the above rulings. The trial court, in rejecting plaintiff's argument, relied on *Keel v. Compton* (1970), 120 Ill. App. 2d 248, 256 N.E.2d 848. There, the jury in a wrongful death case delivered a verdict of $5,000 for the plaintiff. In attempting to justify the small award, the defendant had at trial and on appeal argued, based upon the accumulation or enhancement of the estate theory, that since the decedent had accumulated very little during his lifetime he would not have any money to leave to his heirs and, therefore, the low verdict was justified. This court, in rejecting the defendant's argument, stated that "[i]t would be sufficient to say that the 'enhancement of estate test' is not the measure of damages presently embodied either in our general law or the instruction relating thereto." 120 Ill. App. 2d 248, 255.

Here, plaintiff, in support of this element of damages, cites the United States Supreme Court case of *Illinois Central R.R. Co. v. Barron* (1867), 72 U.S. (5 Wall.) 90, 18 L. Ed. 591. Plaintiff's reliance

on *Barron* is misplaced, given the discussion of that case by our supreme court in *Rhoads v. Chicago & Alton R.R. Co.* (1907), 227 Ill. 328, 81 N.E. 371. In *Rhoads,* the court first noted that *Barron* had been "relied upon *** insistently" by litigants for the proposition that collateral kindred may recover as pecuniary damages the probable accumulations of the estate of the deceased which would have descended to them. (227 Ill. 328, 337.) The *Rhoads* court then stated, referring to its earlier opinion in *North Chicago Street R.R. Co. v. Brodie* (1895), 156 Ill. 317, that a similar contention had been made in *Brodie* and rejected. Defendant in the case at bar maintains, and we agree, that the *Rhoads* case thus laid to rest the contention made here that potential accumulations to a decedent's estate that were cut short by the death of the decedent were to be considered as pecuniary loss to decedent's surviving collateral kindred.

As we recognized in *Keel,* the current jury instructions do not include probable accumulations to the estate as an element of damages. (See Illinois Pattern Jury Instructions, Civil, No. 31.07 (2d ed. 1971).) We see no reason to alter the existing law to embody this damage element where, as here, collateral heirs are involved. Such damages involve certain contingencies and are too speculative for purposes of ascertaining the pecuniary loss to the beneficiary.

## IV

■ Plaintiff further argues that the trial court erred in sustaining objections to certain comments made by plaintiff's counsel during closing argument. The first objection went to the following argument:

> "***[Y]ou might even consider that he would support them [his adult brothers and sisters] directly, even though in the past he had not specifically done so."

Defense counsel objected, stating: "There is no evidence of that." The objection was sustained.

We find no error in sustaining the objection. As we noted previously herein, collateral heirs, unlike lineal heirs, are not entitled to a presumption of substantial pecuniary loss; rather, there must be an evidentiary basis for their claim. (*Howlett v. Doglio* (1949), 402 Ill. 311, 83 N.E.2d 708.) Here, counsel for plaintiff acknowledged in the argument above that prior to the decedent's death the decedent had never directly supported any of his brothers and sisters. Given that collaterals are only to be compensated for those pecuniary losses which are proved, plaintiff's argument was improper, and the above objection was properly sustained.

■ Finally, plaintiff assigns error to the trial court's sustaining of

an objection to plaintiff's rebuttal argument urging jurors to take inflation into account in measuring damages. The trial court sustained defendant's objection on the basis that there was no evidence presented as to inflation. The court's ruling thus did not go to the propriety of discussing inflation or its effect.

In support of his inflation argument, plaintiff at trial erroneously relied upon *Raines v. New York Central R.R. Co.* (1972), 51 Ill. 2d 428, 283 N.E.2d 230, *cert. denied* (1973), 409 U.S. 983, 34 L. Ed. 2d 247, 93 S. Ct. 322. However, as this court recognized in *Kapelski v. Alton & Southern R.R.* (1976), 36 Ill. App. 3d 37, 343 N.E.2d 207, the supreme court in *Raines* never even reached the merits of the inflation issue before it. The *Kapelski* court specifically noted that

> "[i]n *Raines* the appellate court concluded that the use of opinion evidence concerning future inflationary trends and the difficulty in hedging against inflation served to prejudice the jury in its deliberations and should have been excluded. Our Supreme Court reversed the appellate court in *Raines v. New York Central Railroad Co.,* 51 Ill. 2d 428, 283 N.E.2d 230, *cert. denied,* 409 U.S. 983, 34 L. Ed. 2d 247, 93 S. Ct. 322. *It did so without reaching the propriety of the admission of evidence concerning inflation.* Instead, the court held that there was 'other proper evidence' sufficient to support the verdict." (Emphasis added.) (36 Ill. App. 3d 37, 46-47.)

We further noted in *Kapelski* that the "other proper evidence" approach in *Raines* was followed in *Meador v. City of Salem* (1972), 51 Ill. 2d 572, 284 N.E.2d 266. There, the defendant argued it was error to permit testimony as to future inflationary trends. The supreme court in *Meador* found sufficient other proper evidence to support the verdict and, thus, as in *Raines,* declined to discuss the propriety of the admission of evidence as to future inflationary trends.

Plaintiff also cites extensively from *Crabtree v. St. Louis-San Francisco Ry. Co.* (1980), 89 Ill. App. 3d 35, 411 N.E.2d 19. There, the defendant contended that plaintiff's counsel committed reversible error in closing argument when he argued, in effect, that the jury should consider future inflationary trends in determining the present cash value of future lost earnings. Citing *Kapelski* and *Raines,* this court decided not to set aside the verdict because it was supported by "other proper evidence," and we did not reach the propriety of the inflation argument. Accord, *Twait v. Olson* (1982), 104 Ill. App. 3d 191, 198, 432 N.E.2d 1244.

Hence, in each of the cases cited above, the reviewing court refused to hold that evidence or argument relating to future inflation

is proper or improper. The difficulty lies in the fact that inflationary trends tend to be speculative. (*Twait v. Olson* (1982), 104 Ill. App. 3d 191, 198, 432 N.E.2d 1244.) Minimally, we believe that if the inflation issue is to be presented to the jury, there should at least be evidence presented as to future inflation. We cannot conclude that where, as here, no evidence was presented as to future inflation, it was error to sustain the objection to plaintiff's argument urging jurors to consider inflation.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed in part, reversed in part, and remanded for a new trial as to damages.

Affirmed in part; reversed in part; and remanded.

McGLOON and GOLDBERG, JJ., concur.*

*This opinion was adopted as the opinion of the court prior to the retirement of Justice Goldberg.